UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BRENDON ALBERS, Individually, and CHRISTOPHER ESTES, Individually, | \* | CIV. 06-4242 |
| Plaintiffs, | \* | |
| vs. | \* | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MELLEGARD, INC., a South Dakota Corporation, d/b/a, Tri-State Imprement, Inc., STEVE MELLEGARD, Individually, and STAN MELLEGARD, Individually, | \* | |
| Defendants. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COME NOW the above-named Defendants, Mellegard, Inc., d/b/a, Tri-State Implement, Steve Mellegard, and Stan Mellegard, by and through their counsel of record, and respectfully submit this Brief in Support of Defendants' Motion for Summary Judgment.[1]

## Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 320 (1986).

---

[1] Defendants have set forth the pertinent facts in their accompanying Statement of Undisputed, Material Facts in Support of Motion for Summary Judgment and will not repeat those facts separately here, but will instead refer to them, as appropriate, in the context of legal argument.

"The mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, genuine issues of material fact which preclude summary judgment are those "disputes over facts that might affect the outcome of the suit." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). When the movant shows an absence of evidence to support the non-moving party's case, the non-movant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. "A court must enter summary judgment against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Richmond v. Board of Regents of the University of Minnesota*, 957 F.2d 595, 597 (8th Cir. 1992) (quoting *Celotex Corp.,* 477 U.S. at 322).

Summary judgment is particularly appropriate regarding Plaintiffs' claims in this case because: Plaintiffs fail, as a matter of law, to establish a *prima facie* case of actionable race discrimination or that Defendants' legitimate, nondiscriminatory actions were merely a pretext for intentional discrimination; Plaintiffs fail to establish themselves as non-exempt employees for purposes of the Fair Labor Standards Act (FLSA); Plaintiffs fail to show Defendants acted in violation of the Employee Retirement Income Security Act (ERISA); Plaintiffs fail to show the individual Defendants' liability to Plaintiffs; and Plaintiffs fail to show entitlement to punitive damages.

## Section 1981 Race Discrimination

Plaintiffs claim they were discriminated against in their employment at Tri-State on the basis of their race, in violation of 42 U.S.C. § 1981.[2] To prove such discrimination, Plaintiffs must show a *prima facie* case of discrimination by showing:

1. They are members of a protected group;

2. They were qualified for their positions;

3. They sustained an adverse employment action;

4. They were treated differently from similarly-situated employees on the basis of race or there are circumstances giving rise to an inference of discrimination.

*See e.g.*, *Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir. 2001); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997). Once the Plaintiffs establish a *prima facie* case of discrimination, the burden shifts to Defendants to show a legitimate, business reason for its actions. *Id*. The burden then shifts back to Plaintiffs to show the Defendants' reason to be a pretext for discrimination. *Id*.

In the present matter, Plaintiffs, via their deposition testimony, appear to claim discrimination against them in the form of racial harassment, causing a hostile work environment and leading to a constructive discharge. However, Plaintiffs did not particularly allege such a claim in their Complaint. *See* Complaint (speaking in terms of intolerable working conditions and a racially discriminatory work environment).

> A hostile work environment claim is a distinct theory of discrimination. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts [of discrimination or retaliation].") As such, it should be pleaded separately under Rule 10(b) of the

---

[2] This is not a Title VII claim, as Tri-State's number of current employees – ten – is too few to establish Title VII jurisdiction. However, as a § 1981 claim, the analysis is similar to a Title VII race claim, the *McDonnell Douglas* burden shifting analysis. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997).

3

> Federal Rules of Civil Procedure. *See, e.g., Harris v. Radioshack Corp.,* 2002 WL 1907569, at *2 (S.D.Fla.2002) ("If Plaintiff desires to assert discrimination claims under various theories, these claims must be asserted in separate counts in accordance with Fed.R.Civ.P. 10(b)").

*Smith v. Glenny Glass Co., Inc.*, 2007 WL 1202713, *4 (S.D. Ohio April 20, 2007).

If the Court permits Plaintiffs to proceed with a hostile work environment claim, their apparent argument is that Stan's use of racially-based comments in their presence constitutes actionable harassment and led to a hostile work environment. To prevail on a hostile work environment claim, the Plaintiffs must establish that their "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [their] work environment," *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986); and "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

"Upon considering whether a plaintiff has presented evidence of the objective component of a hostile work environment claim, the district court is required to look at all of the attendant circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Willis*, 202 F.3d at 809 (citing *White v. Honeywell, Inc.,* 141 F.3d 1270, 1275 (8th Cir. 1998) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367)).

"[W]hile [a plaintiff] was subjected to unpleasant conduct and rude comments by [co-workers], as were other employees, Title VII is 'not designed to create a federal remedy for all offensive language and conduct in the workplace' nor can we, under the auspices of Title VII, 'impose a code of workplace civility.'" *Willis*, 262 F.3d at 809-10 (quoting *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir.1999)). "Common sense, and an appropriate sensitivity

to social context, will enable courts and juries to distinguish between simple teasing or roughhousing ... and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Williams v. General Motors Corp,* 187 F.3d 553, 562 (6th Cir. 1999) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75 (1998)), *quoted in*, *Smith v. Glenny Glass Co., Inc.*, 2007 WL 1202713, *7, n.9.

In the present case, it is not disputed that the place of employment involved "locker room" type language. Profanity was frequent, and Plaintiffs themselves admitted to use of racial epithets at work, including using the terms prairie nigger or nigger to others or themselves. Plaintiff Albers explained that he did not believe it was offensive for he and Estes to use such terms to refer to themselves; it was only offensive when Stan said it. Nor did Plaintiffs ever explain to Stan that they considered it offensive, rather than joking.

The testimony of Plaintiffs and third parties also shows that Albers was very close to Stan and Steve, telling people that he loved them, and Stan treated him like a son, while Steve advanced Albers money to attend in-patient alcohol treatment and visited him on several occasions there. This context places the comments of Stan in a very different light. Plaintiff Albers admits that he never told Stan or Steve that such comments bothered him; yet, Plaintiff Albers was sufficiently independent of Stan and Steve that he pushed them to establish a retirement plan for all employees that Tri-State never previously had in existence. In this context, and in light of Plaintiffs' own use of racial epithets, the Court should find Plaintiffs fail to show unwelcome harassment.

> [W]hether an environment is hostile or abusive can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). A "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (internal quotation

marks and citations omitted). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, *there must be a steady barrage of opprobrious racial comments." Id.* (emphasis added; internal quotation marks and citations omitted). "Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Id.* at 110-11 (internal quotation marks and citations omitted).

*Kemp v. A & J Produce Corp.*, 164 Fed.Appx. 12, 14, 2005 WL 3310063, *1 (2d Cir. 2005).

In *Reed v. Shepard*, 939 F.2d 484, 491-92 (7th Cir. 1991), the Seventh Circuit found that a plaintiff failed to establish sexual harassment when she repeatedly engaged in sexually explicit jokes, suggestions and offers, and appeared enthusiastically receptive to such language. In another case where a plaintiff claimed he was called a "nigger, " "lazy nigger," "piece of shit nigger" and good for nothing nigger," summary judgment was granted for the employer when the employee did not initially complain of the comments and failed to allege that the remarks unreasonably interfered with his job performance. *See Brown v. Middaugh*, 41 F. Supp.2d 172 (N.D.N.Y. 1999). *Brown* stated:

> "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." As the Supreme Court has stated, " 'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." If racist comments, slurs, and jokes are to constitute a hostile work environment, then there must be "more than a few isolated incidents of racial enmity." *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986). *See also Tomka,* 66 F.3d at 1305 n. 5 ("isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive"); *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577-78 (2d Cir.1989) (to be actionable, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). In other words, "[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments," *Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994). Whether racial slurs constitute a hostile work environment typically depends upon "the quantity, frequency, and severity" of those slurs, *Vore v.*

> *Indiana Bell Tel. Co.,* 32 F.3d 1161, 1164 (7th Cir.1994), considered
> "cumulatively in order to obtain a realistic view of the work environment." *Doe v.
> R.R. Donnelley & Sons Co.,* 42 F.3d 439, 444 (7th Cir.1994).

*Brown*, 41 F.Supp.2d at 187. *See also Hannon v. Wilson Greatbatch, Ltd.*, 2002 WL 1012971, at *3-4 (W.D. N.Y. April 24, 2002) (multiple uses of the word "nigger" were not sufficiently severe and pervasive to alter the conditions of plaintiff's work environment); *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp.2d 122, 132 (N.D.N.Y. 2002) (repeated use of "nigger" by employees in connection with O.J. Simpson trial did not create hostile work environment); *Perkins v. General Motors Corporation,* 709 F.Supp. 1487, 1500 (W.D.Mo.1989) ("Perkins was an active, encouraging participant in sexually explicit conversations and actions"), *aff'd in relevant part,* 911 F.2d 22 (8th Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *Weinsheimer v. Rockwell Int'l. Corp.,* 754 F.Supp. 1559, 1564 (M.D.Fla.1990) ("plaintiff's willing and frequent involvement in the sexual innuendo prevalent in her work area indicates that she did not find the majority of such conduct truly 'unwelcome' or 'hostile' "); *Loftin-Boggs v. City of Meridian,* 633 F.Supp. 1323, 1327 (S.D.Miss.1986) ("plaintiff often made jokes about sex and participated in frequent discussions and bantering about sex"), *aff'd,* 824 F.2d 971 (5th Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988); *Gan v. Kepro Circuit Systems,* 28 FEP Cases 639, 1982 WL 166 (E.D.Mo.1982) (plaintiff actively contributed to the distasteful working environment)..

In the present case, the Court is faced with a rough-and-tumble place of employment, where employees, including the Plaintiffs, used profanity and racially-based comments and jokes. Additionally, Plaintiff Albers was particularly close to both Stan and Steve; yet, he never told either of them that he was offended by Stan's comments, even in the course of heart-to-heart talks during Albers' alcohol treatment.

7

> Finally, to prove constructive discharge, Plaintiffs must prove that Tri-State "intentionally render[ed] the working conditions so intolerable'" that the plaintiff was "essentially forced to leave the employment." *White,* 141 F.3d at 1279 (citing *Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1420 (8th Cir.1995)); *see also Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494-95 (8th Cir.1996) ( *Tidwell* ). [Plaintiffs] must demonstrate "more than just a Title VII violation by [his] employer in order to prove that [he] was constructively discharged." *Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1247 (8th Cir.1998) ( *Coffman* ). [Plaintiffs are] required to prove that [Tri-State- "deliberately creat[ed] intolerable working conditions with the intention of forcing [them] to quit" and that "a reasonable person in [their] situation would find the working conditions intolerable. Thus, the intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings." *Id.* (citing *Tidwell,* 93 F.3d at 494). [Plaintiffs] may "satisfy the intent element by demonstrating that [they] quit as a reasonably foreseeable consequence of the employer's discriminatory actions." *Tidwell,* 93 F.3d at 494 (citing *Hukkanen v. International Union of Operating Eng'rs,* 3 F.3d 281, 285 (8th Cir.1993)). Moreover, [Plaintiffs are] required to prove that [Tri-State] knew or should have known of the alleged harassment, because "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Id.* (citing *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995)); *see also Coffman,* 141 F.3d at 1247.

*Willis*, 262 F.3d at 810. The Eighth Circuit has also stated, "A constructive discharge occurs when an employee resigns after the employer has created an intolerable working environment in a deliberate attempt to compel such a resignation." *Tatum v. City of Berkeley,* 408 F.3d 543, 551 (8th Cir.2005), *quoted in, Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005). "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable. To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995). An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged. *Id.*" *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) (citation omitted).

Here, Plaintiffs never told anyone that they objected to the joking, teasing, profanity, or racial language occurring on at Tri-State. To the contrary, they engaged in it themselves. Nor is there evidence that Tri-State tried to force Plaintiffs to resign; rather, the evidence is that Tri-State did not realize Plaintiffs were offended by the language in the workplace, as Plaintiffs engaged in it, themselves, and never told others they found Stan's comments offensive. Further, Stan and Steve both engaged in close, friendly relationships with Albers and loaned money to both Albers and Estes at various times, working with Plaintiffs to attempt to keep them financially above water.

Finally, on the day Plaintiffs quit their employ at Tri-State, they admittedly left, not to due racist language, but due to Tri-State's refusal to provide Chris with health insurance. Plaintiffs said nothing about being offended by racist comments on the day they left, and both testified that they decided to quit when Tri-State would not provide health insurance to Estes. Thus, Plaintiff Albers admittedly quit because he did not want to lose his assistant, and Estes quit because he wanted Tri-State to provide him with health insurance, not because Plaintiffs felt racial harassment had risen to the level that it was severe and pervasive, affecting their job performance, and they could no longer tolerate the conditions of their employment.

It is important to note that Tri-State did not provide health insurance to employees in the position occupied by Estes because Tri-State considered that position to be temporary, as-needed, or part-time. Thus, the refusal to provide Estes with health insurance was not race-based. Indeed, Albers, a fellow Native American employee, was receiving not only health insurance benefits, but was allowed to receive an in-cash benefit in lieu of such benefits at his desire, and Albers talked Steve and Stan into creating a retirement plan for Tri-State employees. Albers received health insurance after he was promoted from the temporary assistant position to

his position as head painter. Thus, the decision to not provide health insurance for the temporary, as-needed assistant position does not constitute racial discrimination, as similarly-situated employees are not treated differently on the basis of their race. Nor do Plaintiffs show that decision to be pretext on the part of Tri-State.

Finally, Steve and Stan should not be subject to individual liability under § 1981, as they did not have individual "contracts" of employment with Plaintiffs. The Eighth Circuit has ruled that supervisors are not individually liable for alleged race discrimination by an employer. *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999); *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691 (8th Cir. 1997) (ruling bank president could not be held personally liable for sexually harassing bank teller); *Smith v. St. Bernard's Regional Med. Center*, 19 F.3d 1254 (8th Cir. 1994) (claims against individual defendants properly dismissed because liability for discrimination attached only to employer).

Accordingly, Defendants respectfully ask the Court to grant summary judgment as to Plaintiffs' claims of race discrimination under § 1981.

### ERISA claims

Plaintiffs also claim Defendants violated ERISA by denying Albers the opportunity to enroll in the Tri-State health insurance until his promotion to head painter, by denying Estes the opportunity to enroll in the health insurance program, and by not personally delivering to Albers a copy of the retirement plan's summary plan description or annual statements. First, it should again be noted that the Eighth Circuit has held that individual officers, such as Steve and Stan, have no personal individual liability under ERISA. *See Rockney v. Blohorn*, 877 F.2d 637, 641 (8th Cir. 1989). Second, the record here has shown that the summary plan description and regular accounts were provided directly to employees from the company which administered the

retirement plan for Tri-State employees, and when the plan was created, the third party representative hand-delivered written materials to the employee participants. As the plan was administered by the third party, and documents were actually delivered to employee participants, Plaintiffs have not shown Tri-State actually failed in any duty to directly deliver those documents to employees.

Additionally, as described above, Tri-State did not permit temporary, as-needed employees such as Estes, and prior to his promotion, Albers, to enroll in the company's employee benefits plans. When Tri-State determined such a temporary, as-needed employee was not eligible to enroll in its company health insurance plan, that determination does not give rise to an ERISA cause of action on the part of such temporary employees. ERISA authorizes civil actions by plan participants, plan beneficiaries, plant fiduciaries, and employee benefit plans. *See* 29 U.S.C. §§ 1132(a)(1)-(4), 1132(d), and 1137(a); *see also Kiesz v. General Parts, Inc.*, 2007 WL 963489, *13 (D.S.D. March 28, 2007) (finding no ERISA preemption of claim by employee not eligible to participate in employer's plan because of part-time status). "There is no jurisdiction under ERISA for a suit by any party other than a participant, beneficiary, or fiduciary of a plan covered by ERISA." 2 EMPLOYMENT COORDINATOR § 45.42 (2008 Thompson West) (citing *Franchise tax Bd. of State of Cal. v. Construction Laborers Vacation trust for Southern California*, 463 U.S. 1 (1983)). Thus, many employers do not extend invitations to join employee benefit plans until employees have remained in their employer's employ for set periods of time, ranging from six months, two years, etc.

Finally, even if there was ERISA jurisdiction, Plaintiff Albers' bankruptcy filing in 2004 and discharge in May 2005 would result in the bar of any claims that he should included as assets in his bankruptcy estate. *See In re Albers*, D.S.D., Bkcy Ct. No. 04-41572, Schedule B

11

("Personal Property"), not including any listing of claim for health insurance coverage or any claims against any of these Defendants prior to date of bankruptcy discharge March 22, 2005.

> Failure to list an accrued cause of action as an asset during bankruptcy proceedings can trigger judicial estoppel implications. Upon filing of a bankruptcy petition, all assets of the debtor, including potential causes of action, become an asset of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *United States ex rel. Gebert v. Transp. Admin. Servs.,* 260 F.3d 909, 913 (8th Cir.2001) ("[T]he property of the estate includes all causes of action that the debtor could have brought at the time of the bankruptcy petition."). Debtors have an affirmative obligation to disclose all of their assets to the bankruptcy court. *See* 11 U.S.C. § 521(a)(1)(B). Failure to disclose acts as an affirmative statement that no cause of action exists, a position inconsistent with a later attempt to enforce the cause of action in a separate proceeding. *See Harvey v. S. Minn. Beet Sugar Coop.,* No. Civ. 02-4934 (PAM/RLE), 2004 WL 368471, at *3 (D.Minn. Feb. 26, 2004). Judicial estoppel bars debtors who fail to disclose an accrued claim as an asset in their bankruptcy proceedings from prosecuting the claim after discharge from bankruptcy. *See Foster v. Foster,* 673 N.W.2d 667, 672 (S.D.2003); *see also Harvey,* 2004 WL 368471, at *3.

*Harms v. Cigna Ins. Companies*, 421 F.Supp.2d 1225, 1228 (D.S.D. 2006). Accordingly, any claim by Albers against Tri-State, Stan or Steve that pre-dates May 22, 2005 is barred as judicially estopped due to Albers' failure to list such a claim as an asset in his bankruptcy schedules.

Accordingly, the Court should grant summary judgment to Defendants upon Plaintiffs' ERISA claims.

## **FLSA claims**

Plaintiffs' third claims against defendants fall under FLSA, with Plaintiffs claiming they worked overtime hours, but were not paid time and one-half for overtime hours. As noted in Defendants' Statement of Undisputed, Material Facts, the employees at Tri-State would clock each other in and out, and Tri-State does not believe either of the Plaintiffs worked overtime more than very rarely. Additionally, Tri-State's bookkeeper contacted the South Dakota

Department of Labor, which advised her that Tri-State did not need to pay its employees overtime.

In so advising Tri-State's bookkeeper, the Department of Labor was likely relying upon the overtime pay exemption granted to employees of automobile, truck, and farm equipment dealer employees. *See* U.S.C. § 213(b)(10)(A). Under this exemption, most employees of implement dealers, such as Tri-State, are exempt from the FLSA's overtime pay provisions. When a business, like Tri-State is primarily engaged in selling automobiles, trucks or farm implements to ultimate purchasers, many of its employees are exempt from overtime rights. *Id*. This includes mechanics, such as Albers and Estes. The FLSA does not define "mechanics" who are exempt, but the term has been interpreted to include all employees doing mechanical work, such as "get ready" mechanics, automobile, truck or farm implement mechanics, body or fender mechanics, used are reconditioning mechanics, and wrecker mechanics. *See Paneto v. Motor Car Concepts II, Inc.*, 2007 WL 328730 (M.D. Fla. Jan. 31, 2007); *Shultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61 (5th Cir. 1970).

Thus, an employee of a car dealer who was described as a "pre-delivery inspection technician" and who checked the cars' air conditioning, battery, steering, fluids, interior, gauges, locks, mirrors, windows and seats, drove the cars a few miles to ensure proper operation, installed accessories, attached license plates and stickers, and ensured proper door and hood adjustments was an exempt "mechanic." *See Viart v. Bull Motors, Inc.*, 149 F. Supp.2d 1346, 1347-48 (S.D. Fla. 2001). This employee did not perform repairs on the cars. *Id*. at 1348. *Viart* ruled the employee fell within the "get ready" mechanics considered exempt under the FLSA. *Id*. at 1349.

In this case, Plaintiffs may claim they were common laborers, but they actually engaged in more mechanical work than mere unskilled laborers. They not only washed the farm equipment, the engaged in body work, not just sanding, painting, or polishing. They were involved with such mechanical items as electrical work, tire work, slide wheels, machinery set-up. Thus, the Court should consider Plaintiffs to be exempt from the FLSA under the mechanic exemption provided to automobile, truck and farm implement dealers.

Even if the Court were not to find Plaintiffs exempt from the FLSA, this is not a case suitable for an award of liquidated damages against Tri-State.[3] The FLSA allows a recovery of liquidated damages (or double damages) only if the employer was not acting in good faith, and the employer was not acting with reasonable grounds to believe it was not violating the FLSA. *See* 4 Employment Coordinator § 41.272 (2008 Thomson West) (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 202 (7th Cir. 1986); *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529 (19th Cir. 1991); *Casserly v. State*, 844 P.2d 1275 (Colo. App. 1992)). In the present case, Tri-State's bookkeeper contacted the South Dakota Department of Labor to determine whether Tri-State should be paying overtime wages. She was advised that Tri-State did not need to do so. Thus, Tri-State was acting in good faith, and with a reasonable ground to believe it was not violating the FLSA when it was following advise its bookkeeper received from the Department of Labor. Accordingly, liquidated damages are not appropriate to this case.

Finally, even if the Court were to permit Plaintiffs to recover even a compensatory amount of overtime salary (*i.e.*, amounts representing unpaid overtime compensation, *see* 29 U.S.C. § 216), Plaintiffs may receive such backpay of overtime wages only for two years

---

[3] Again, this is not a cause of action which may be asserted individually against Steve and Stan. *See* 29 U.S.C. § 216(b) (permitting FLSA action against employer, but not any other person). Nor does the FLSA allow an award of punitive damages. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942).

preceding the filing of this suit. *See* 29 U.S.C. § 255(a); *Kulik v. Superior Pipe Specialties Co.*, 203 F. Supp. 938 (N.D. Ill. 1962); *Kuhn v. Philadelphia Elec. Co.*, 487 F. Supp. 974 (E.D. Pa. 1980), *aff'd*, 745 F.2de 47 (3d Cir. 1984).

In accordance with the foregoing, the Court should grant summary judgment to Defendants with regard to Plaintiffs' claims under the FLSA.

## **Punitive Damages**

Finally, Plaintiffs seek punitive damages. Such damages are not recoverable under Plaintiffs' claims alleging violations of ERISA and FLSA *See e.g.*, *Massachusetts Mut. Life Inc. Co. v. Russell*, 473 U.S. 134 (1985); *Howe v. Varity Corp.*, 36 F.3d 746, 752 (8th Cir. 1994); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir. 1981); *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819 (11th Cir. 1991); *Harsch v. Eisenberg*, 956 F.2d 651 (7th Cir. 1992); *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544 (6th Cir. 1998); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir.), *cert. denied*, 488 U.S. 909 (1988). *Braswell v. City of El Dorado, Ark.*, 187 F.3d 854 (8th Cir. 1999); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986); *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir. 1991). Thus, the only remaining claims under which Plaintiffs could seek punitive damages are the § 1981 claims of race discrimination.

"Plaintiffs who seek punitive damages in employment discrimination cases face a formidable burden." *Lawrence v. CNF Transportation, Inc.,* 340 F.3d 486, 495 (8th Cir. 2003). Few discrimination cases contain the necessary malicious or reckless conduct by an employer for which an employee can attain punitive damages. *See Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1071 (8th Cir. 2005); *Rowe v. Hussmann Corp.,* 381 F.3d 775, 783 (8th Cir. 2004).

15

For Tri-State to be subject to punitive damages, there must be proof that Defendants acted with malice or reckless indifference to Plaintiffs' federally protected rights. *Kolstad v. American. Dental Ass'n,* 527 U.S. 526, 535 (1999). *See also Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1008 (8th Cir. 2000). In *Kolstad,* the Supreme Court held that an "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad,* 527 U.S. at 536. *See also Ferris v. First Nat'l of Nebraska,* 2006 WL 1720488 (D. Neb. 2006) (providing that although the employer's conduct does not have to amount to "egregious," the employee must make a showing that the employer acted intentionally with an understanding that it may be violating federal law). "Some of the factors to be considered in an award of punitive damages are the outrageousness of the defendant's conduct, the defendant's financial status, the injury suffered, the relationship between the parties, and the aggravating and mitigating factors." *Carter v. Kansas City Southern Ry. Co.,* 456 F.3d 841, 2006 WL 2192646 *4 (8th Cir. 2006) (citing *Conseco Fin. Servicing Corp. v. N. Am. Mtg. Co.,* 381 F.3d 811, 823 (8th Cir. 2004)). *See also Varner v. Nat'l Super Markets, Inc.,* 94 F.3d 1209, 1214 (8th Cir. 1996), *cert. denied,* 519 U.S. 1110 (1997) (punitive damages not appropriate because the plaintiff failed to prove employer's conduct was outrageous due to its evil motive or reckless indifference to plaintiff's rights).

In this case, there is no evidence that Defendants acted with malice or a reckless indifference to the Plaintiffs' rights. Further, there is no indication that Defendants acted with the intent or knowledge that their actions may be violating the Plaintiffs' federally protected rights. Rather, the workplace was a rough one, involving frequent use of profanity, vulgar language, or jokes. This language sometimes involved racially-based comments, in the vicinity of Plaintiffs and by Plaintiffs, themselves. However, the relationship between Plaintiffs and

Steve and Stan also shows close friendship – Albers told several people that he loved Steve and Stan; Tri-State repeatedly gave both Plaintiffs advances upon their pay; Tri-State allowed Plaintiffs to charge gas at Tri-State's expense during their employ; Tri-State loaned Albers money (and gave him time off) to attend in-patient alcohol treatment; Tri-State bought one vehicle for Albers and considered his five-day disappearance with another as a loan; Steve was Albers' only visitor at the alcohol treatment center, where they had heart-to-heart talks. Tri-State had no intention of creating a racially hostile work environment for Plaintiffs or to force them to resign their employment.

Additionally, Tri-State did not treat Plaintiffs differently from similarly situated people of another race with regard to the health insurance plan or retirement plan. Rather, Tri-State considered the position of assistant to the head painter to be a temporary, as-needed position, similar to a probationary employee. As such, Tri-State did not believe that employee to be qualified for its insurance plan. However, when Albers was promoted from that position to head painter, he began receiving coverage under Tri-State's health insurance plan, or a monetary equivalent of the cost of his premium, at his discretion. Similarly, Albers received coverage under the retirement plan, which was created at his urging of Steve and Stan. Thus, the Plaintiffs themselves show that Tri-State did not differentiate between races with regard to coverage under its health insurance and retirement plans; rather, differentiation related to the position Estes held, which Tri-State considered to be temporary, as-needed, like a probationary employee. There is no evidence that this conduct falls within the "narrow class of cases" where punitive damages are warranted. *See Pedroza,* 397 F.3d at 1071.

Therefore, Plaintiffs' claims for punitive damages should be dismissed.

## Conclusion

In accordance with the foregoing legal authorities and argument, Defendants respectfully request that the Court grant summary judgment in their favor as to Plaintiffs' claims against them.

Dated at Sioux Falls, South Dakota, this 3rd day of March, 2008.

DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.

/s/ Sandra Hoglund Hanson
Electronically Filed
Susan Brunick Simons
Sandra Hoglund Hanson
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants, hereby certifies that a true and correct copy of the foregoing "Brief in Support of Defendants' Motion for Summary Judgment" was served by electric service by the Court upon:

Richard D. Casey
Ryland Deinert
Lynn, Jackson, Shultz & LeBrun, P.C.
P.O. Box 1920
Sioux Falls, SD 57101-3020

*Attorneys for Plaintiffs*

on this 3rd day of March, 2008.

/s/ Sandra Hoglund Hanson
Electronically Filed