UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| BRENDON ALBERS, Individually, and CHRISTOPHER ESTES, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> MELLEGARD, INC., a South Dakota Corporation, d/b/a, Tri-State Imprement, Inc., STEVE MELLEGARD, Individually, and STAN MELLEGARD, Individually, <br><br> Defendants. | CIV. 06-4242 <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

COME NOW Mellegard, Inc., Steve Mellegard, and Stan Mellegard, the Defendants in the above-entitled matter, by and through counsel of record, and respectfully submit this Response to Plaintiffs' Motion for Partial Summary Judgment. As reflected in Defendants' response to Plaintiffs' Statement of Material Facts, there are material facts in dispute precluding any grant of partial summary judgment to Plaintiffs regarding the Counterclaim against Plaintiffs.

First, the Court should note that the Counterclaim against Plaintiffs arises from three (3) circumstances:

(1) on the day Plaintiffs quit the employ of Tri-State, Estes, with the participation and knowledge of Albers, charged gas to Tri-State's account despite the fact that they had just quit working at Tri-State; *see* Estes Depo. at 57-58; Albers Depo. at 88-90.

(2) after Plaintiffs quit the employ of Tri-State, it was discovered that supplies and equipment they, alone, used were gone; thus, it was reasonably believed that Plaintiffs took those items; *see* Steve Mellegard Depo. at 62-63; Stan Mellegard Depo. at 38.

(3) Albers received several advances on his wages while working at Tri-State, and when Albers quit working, he still owed Tri-State more than $3,000. *See* Albers Depo. at 103-05 & Exhibit 1.

Plaintiffs now describe the Counterclaim as filed to harass, embarrass and intimidate them even though two of the three above-described events are essentially undisputed by Plaintiffs. The Court should deny Plaintiffs' Motion for Partial Summary Judgment based upon the disputes of material fact which exist to the extent Plaintiffs do not dispute these items.

Plaintiffs claim that Estes' final paycheck was withheld, and thus, he owes only 65 cents for the gas he charged. This arithmetic is not so clear as Estes contends. Tri-State's bookkeeper testified, "We didn't owe him money because he had child support – he had a child support payment. You are asking me something that I don't remember clearly. . . . We didn't owe him any money. He owed us money because he had child support payments." *See* Murra Depo. at 23. Ms. Murra was then asked how much Estes' child support obligation was, and she replied, "It was whatever the Court had ordered. I don't remember the figure anywhere." Ms. Murra was then asked about Estes' last timecard, and she testified, "I guess that's what he – his paycheck would have been 161.50 without, you know, withholdings. And that's what he owed us." *Id*. at 24. She was asked whether the amount deducted from Estes final paycheck included only child support or both child support and the gas charge, and she responded, "I do not know for sure, but I am thinking it probably included the gasoline, but I – I don't know for sure." *Id*. at 24. She was then asked about Estes' child support obligation, but was not sure of the amount required to

be withheld due to that obligation. *Id*. at 24-25. The exhibit which shows monies withheld from Estes' paycheck sometimes includes the amount of 52.15, and other times includes various other amounts to be withheld. *Id*. at Exhibit 4. Finally, Ms. Murra was asked if Estes owed Tri-State only 65 cents, in that his last paycheck was for 161.50, and they deducted 162.15. *Id*. at 25-26. She responded, "That 161.50, none of the with – you know, the withholdings are taken out of there." *Id*. at 26.

As shown by this testimony, even if the cost of the gas charged by Estes was "taken out" of Estes' final paycheck, he would still owe Tri-State more than 65 cents, as Tri-State would be obligated to withhold from Estes' paycheck federal income tax or social security withholdings, *e.g.*, FICA, etc. Thus, the amounts to be withheld for federal income tax purposes may meet or exceed the amount of gas charged by Estes, and the amount Estes owes Tri-State certainly exceeds 65 cents. Additionally, this testimony also reflects that Estes' child support obligation was not charged against every paycheck, but when the paycheck was too small, it would be charged at different times for different amounts. *See* Murra Depo. at Exhibit 4. Thus, the bookkeeper was not certain whether Estes' final paycheck even included a deduction for the amount of gas he charged after he quit.

Further, there is certainly a dispute regarding Estes' claim that he still had permission to charge gas to Tri-State after he quit. Aside from the fact that such a claim is frankly incredible, Stan Mellegard testified that weeks prior to August 10, 2006, Estes was told he could no longer charge gas to Tri-State. *See* Stan Mellegard Depo. at 39-41. What is undisputed is that Plaintiffs quit working at Tri-State, went across the street together, and put gas into Estes' car on Tri-State's account. *See* Estes Depo. at 57; Albers Depo. at 88-90. To act in such a matter, charging

gas to the account of someone else, without their permission, constitutes conversion under South Dakota law.

In South Dakota, "[c]onversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 20, 652 N.W.2d 756, 766 (citing *Ward v. Lange*, 1996 SD 113, ¶ 17 553 N.W.2d 246). "Intent or purpose to do a wrong is not a necessary element of proof to establish conversion." *Id.* (quoting *Rensch v. Riddle's Diamonds of Rapid City, Inc.*, 393 N.W.2d 269, 272 (S.D. 1986)). In this case, Estes and Albers acted together to charge gas to the account of the employer whose employ they had just quit. There is testimony that Estes had already been told he had no permission to charge gas to Tri-State any longer. Thus, the charging of gas was an unauthorized exercise by Plaintiffs of control or dominion over the personal property – *i.e.*, cash or charging account – of Tri-State that repudiated Tri-State's rights to that cash or charging account.

Plaintiffs seem to argue that the amount in question is so *de minimis* that it should not count as conversion, or alternatively, that Estes, in effect, paid back the amount in question when his final paycheck was withheld because of the amounts of monies he owed to Tri-State. These arguments fail to consider that Tri-State's bookkeeper believes Estes still owes monies to Tri-State. His final paycheck was too small to cover his child support obligation and this unauthorized gas charge, let alone the federal income tax or social security withholdings required to be taken from any employee's paycheck. Thus, Estes still owes monies to Tri-State, likely including the amount he charged for gas, without permission. Albers' involvement in the decision to cross the street and charge gas to Tri-State's account after the Plaintiffs quit together suffices to make him jointly liable with Estes. *See Northern Finance Corp. v. Midwest*

*Commercial Credit Co.*, 239 N.W. 242, 244 (S.D. 1931) ("The general doctrine under examination embraces as well the case of a joint conversion of chattels, as any other instance of joint tort to property or person. When two or more have united in the act which amounts to a conversion, or have so interfered with the chattel as to constitute a conversion within the legal meaning of the term, the owner or person having the special property may sue all, or one, or any, as in the case of any other tort. But there must be a community in the wrong-doing; the wrongful act must constitute a conversion on the part of all, and in that act all must have engaged. . . . If there is no such community, a joint action for the conversion will not lie, and a fortiori, it will not lie when the defendants have not each been guilty of an act which is a wrongful conversion."). Thus, summary judgment does not lie for the first item claimed in the Counterclaim.

      The second item claimed in the Counterclaim relates to conversion of supplies and equipment belonging to Tri-State. Plaintiffs essentially argue that because Defendants do not have an eyewitness stating Plaintiffs were seen taking the property, and because Plaintiffs deny taking it, they must be found to not have taken it, as a matter of law. If this were true, far fewer criminal defendants would be charged, much less convicted, of theft. This argument asks the Court to act as though the concept of circumstantial evidence does not exist. However, "circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974); *see also United States v. Spear*, 734 F.2d 1, 2 (8th Cir. 1984) ("Circumstantial evidence is no less probative than direct evidence."); *Doyle v. United States*, 318 F.2d 419, 421(8th Cir. 1963) (upholding criminal conviction for conversion even though all of the evidence was circumstantial, no one saw the defendant take the monies, and defendant denied taking it).

In this case, Plaintiffs denied taking supplies and equipment from Tri-State, and no one saw them taking such items. However, when Plaintiffs worked for Tri-State they used certain supplies and equipment specific to their jobs in painting implements. Plaintiffs quit their jobs after a heated discussion with Steve Mellegard, and then it was discovered that certain of the painting supplies and equipment were missing. In the words of Steve Mellegard, when asked what supplies and equipment were missing, "DA sanders that we referred to, masking tape, sandpapers. There was zero painting supplies. Paint guns are always owned by the person that does the painting. In this case Brendon owned his own paint gun, so obviously he is entitled to take his own paint guns. But DA sanders are gone, grinder is gone, sandpapers, that type stuff. Cupboard is bare." *See* Steve Mellegard Depo. at 62-63.

Steve Mellegard and Stan Mellegard were asked whether they "know" either of the Plaintiffs took the supplies and equipment. *See* Stan Mellegard Depo. at 38; Steve Mellegard Depo. at 63. The burden of proof is not a 100% certainty of knowledge, nor even beyond a reasonable doubt. Rather, the fact-finder would merely have to find it more likely true than not true that Plaintiffs were the parties who took the missing items. *See* Eighth Circuit Manual of Model Jury Instructions (Civil) 3.04 (2005). A reasonable person can infer from the fact that the very supplies and equipment that Plaintiffs used in the workplace were completely gone – the cupboard was bare – just after Plaintiffs suddenly and emotionally quit work, that Plaintiffs were the parties who took those supplies and equipment. In consideration of the circumstantial evidence, the fact that no one actually saw Plaintiffs take the supplies and equipment does not entitle them to judgment as a matter of law regarding this part of the Counterclaim.

The final part of the Counterclaim relates to monies that Albers alone owes to Tri-State. While Albers worked at Tri-State, he frequently received advances or outright loans from the

company. *See* Albers Depo. at 103-05 & Exhibit 1. With a question about only one entry on a list of advances or loans Albers received from Tri-State, Albers has admitted still owing Tri-State over $3,000. *Id.* Thus, there would be no factual or legal basis to granting judgment to Plaintiffs as a matter of law with respect to this aspect of the Counterclaim.

In accord with the foregoing, Defendants respectfully request the Court to deny Plaintiff's Motion for Partial Summary Judgment.

Dated at Sioux Falls, South Dakota, this 24th day of March, 2008.

>DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.
>
>/s/ Sandra Hoglund Hanson
>Electronically Filed
>Susan Brunick Simons
>Sandra Hoglund Hanson
>206 West 14th Street
>PO Box 1030
>Sioux Falls, SD 57101-1030
>Telephone: (605) 336-2880
>Facsimile: (605) 335-3639
>*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants, hereby certifies that a true and correct copy of the foregoing "Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment" was served by electronic service by the Court upon:

>Richard D. Casey
>Ryland Deinert
>Lynn, Jackson, Shultz & LeBrun, P.C.
>P.O. Box 2700
>Sioux Falls, SD 57101-2700
>
>*Attorneys for Plaintiffs*

on this 24th day of March, 2008.

>/s/ Sandra Hoglund Hanson