UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BRENDON ALBERS, Individually, and CHRISTOPHER ESTES, Individually, | \* \* \* | CIV. 06-4242 |
| Plaintiffs, | \* \* | |
| vs. | \* \* | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MELLEGARD, INC., a South Dakota Corporation, d/b/a, Tri-State Imprement, Inc., STEVE MELLEGARD, Individually, and STAN MELLEGARD, Individually, | \* \* \* \* \* | |
| Defendants. | \* \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COME NOW the above-named Defendants, Mellegard, Inc., d/b/a, Tri-State Implement, Steve Mellegard, and Stan Mellegard, by and through their counsel of record, and respectfully submit this Reply Brief in Support of Defendants' Motion for Summary Judgment.

### Section 1981 Race Discrimination

Plaintiffs make a claim of race discrimination under 42 U.S.C. § 1981, but they have still not clearly enunciated whether they are claiming discrete discriminatory actions against them on the basis of race or whether they claim a hostile working environment. *See Smith v. Glenny Glass Co., Inc.*, 2007 WL 1202713, \*4 (S.D. Ohio April 20, 2007); *Harris v. Radioshack Corp.*, 2002 WL 1907569, at \*2 (S.D.Fla.2002) (recognizing hostile work environment and discrete acts of discrimination as different claims which should be separately pleaded and proven). Rather, Plaintiffs argue that they were the objects of racial epithets and did not receive health insurance.

The Court should not permit Plaintiffs to ease their burdens of pleadings and proof by so conflating their claims.

Assuming Plaintiffs intend to assert a claim of hostile work environment on the basis of the race-based comments, they must establish their "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [their] work environment," *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986); and "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). The Eighth Circuit has stated, "while [a plaintiff] was subjected to unpleasant conduct and rude comments by [co-workers], as were other employees, Title VII is 'not designed to create a federal remedy for all offensive language and conduct in the workplace' nor can we, under the auspices of Title VII, 'impose a code of workplace civility.'" *Willis v. Henderson*, 262 F.3d 801, 809-10 (8th Cir. 2001) (quoting *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir.1999)).

In the present case, it is not disputed that the place of employment involved "locker room" type language. Profanity was frequent, and Plaintiffs themselves admitted to use of racial epithets at work, including using the terms prairie nigger or nigger to others or themselves. Plaintiff Albers explained in his deposition that he did not believe it was offensive for he and Estes to use such terms to refer to themselves; it was only offensive when Stan said it. Nor did Plaintiffs ever explain to Stan that they considered it offensive, rather than joking. Further, it is also undisputed that Albers was very close to Stan and Steve, telling people he loved them and Stan treated him like a son, while Steve advanced Albers money to attend in-patient alcohol treatment and visited him on several occasions there. This context places the comments of Stan

2

in a very different light. Plaintiff Albers admits that he never told Stan or Steve that such comments bothered him; yet, Plaintiff Albers was sufficiently independent of Stan and Steve that he pushed them to establish a retirement plan for all employees that Tri-State never previously had in existence. In this context, and in light of Plaintiffs' own use of racial epithets, the Court should find Plaintiffs fail to show unwelcome harassment.

Plaintiffs do not even respond to the argument that the comments must be considered in their context, relying upon the claim that race-based comments have no place in society. This claim is belied by Plaintiff's own use of race-based comments in the workplace, involving both his own race and that of another minority. In light of Plaintiff's own statements, it is not reasonable to expect Stan to understand that Plaintiff would be offended by language that Plaintiff, himself, was using. Plaintiff Albers responds with an affidavit admitting he never asked Stan to stop using race-based comments, but claiming they somehow "knew" those terms offended him. Such an affidavit, making claims not based on personal knowledge, is not appropriate to dispute Albers' prior deposition testimony that he used such a race-based comment to refer to himself in Stan's presence, but never bothered to explain why that was not offensive, as compared to Stan's use of the same term, nor asked that it stop. *See* Albers Depo. at 63-65. "While district courts must exercise extreme care not to take genuine issues of fact away from juries, '(a) party should not be allowed to create issues of credibility by contradicting his own earlier testimony.' *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983). "Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before.

3

Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.  *Id*. at 1365.

      The close, friendly relationship between Plaintiff and Stan and Steve, as well as the "locker room" atmosphere of such a workplace, place the comments in a very different light.  *See e.g.*, *Reed v. Shepard*, 939 F.2d 484, 491-92 (7th Cir. 1991); *Brown v. Middaugh*, 41 F. Supp.2d 172 (N.D.N.Y. 1999) (summary judgment appropriate even when employee called "nigger, " "lazy nigger," "piece of shit nigger" and good for nothing nigger," because employee did not complain of use and failed to allege remarks interfered with job performance); *Hannon v. Wilson Greatbatch, Ltd.*, 2002 WL 1012971, at *3-4 (W.D. N.Y. April 24, 2002) (multiple uses of the word "nigger" were not sufficiently severe and pervasive to alter the conditions of plaintiff's work environment); *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp.2d 122, 132 (N.D.N.Y. 2002) (repeated use of "nigger" by employees in connection with O.J. Simpson trial did not create hostile work environment); *Perkins v. General Motors Corporation,* 709 F. Supp. 1487, 1500 (W.D.Mo.1989) ("Perkins was an active, encouraging participant in sexually explicit conversations and actions"), *aff'd in relevant part,* 911 F.2d 22 (8th Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *Weinsheimer v. Rockwell Int'l. Corp.,* 754 F. Supp. 1559, 1564 (M.D.Fla.1990) ("plaintiff's willing and frequent involvement in the sexual innuendo prevalent in her work area indicates that she did not find the majority of such conduct truly 'unwelcome' or 'hostile' "); *Loftin-Boggs v. City of Meridian,* 633 F. Supp. 1323, 1327 (S.D.Miss.1986) ("plaintiff often made jokes about sex and participated in frequent discussions and bantering about sex"), *aff'd,* 824 F.2d 971 (5th Cir.1987), *cert. denied,* 484 U.S. 1063, 108

S.Ct. 1021, 98 L.Ed.2d 986 (1988); *Gan v. Kepro Circuit Systems,* 28 FEP Cases 639, 1982 WL 166 (E.D.Mo.1982) (plaintiff actively contributed to the distasteful working environment). In this case, the context of the remarks, the fact that Plaintiff Albers urged Estes, a Native American like himself, to come to work at Tri State, apparently in the midst of and despite such race-based comments, and the fact that Plaintiffs did not allege or testify the remarks interfered with their job performance indicate that Plaintiffs fail to prove a case of hostile work environment as a matter of law.

Not only did not Plaintiffs neither allege nor testify the race-based comments interfered with their job performance, they also testified that they quit because Estes was not going to receive health insurance, not due to the comments. *See* Albers Depo. at 79-80; Estes Depo. at 51-52. This is not a "constructive discharge," where an employer "'intentionally render[ed] the working conditions so intolerable'" that the plaintiff was 'essentially forced to leave the employment.'" *Willis v. Henderson*, 262 F.3d 801, 810 (8th Cir. 2001) (quoting *White,* 141 F.3d at 1279 (citing *Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1420 (8th Cir.1995)); *see also Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494-95 (8th Cir.1996)). Plaintiffs actually contend they quit because Estes was not going to receive health insurance. Such a contention does not fit within the "constructive discharge" rubric. *Id*. *See also Tatum v. City of Berkeley,* 408 F.3d 543, 551 (8th Cir.2005); *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996); *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995).

To the extent Plaintiffs' claim about health insurance would be considered an allegation of a discrete act of discrimination, it must fail because Plaintiffs fail to prove their *prima facie* case of discrimination and fail to show that they did not receive health insurance due to race

discrimination. This failure of proof appears most obviously in the fact that Albers was given health insurance once promoted to the position of head painter. Estes was then hired, at Albers' urging, to the assistant temporary position. Tri State did not provide health insurance to persons in that temporary position, whether the employee was white or Native America. *See* Albers Depo. at 83. Plaintiffs claim they show pretext by claiming Norm Mellegard did not tell Estes he was hired as a temporary employee. However, Norm sold the business to his sons in 1980. *See* Norm Mellegard Depo. at 5. Plaintiffs admit they understood Steve to be their supervisor. *See* Steve Mellegard Depo. at 10; Albers Depo. at 49-50; Estes Depo. at 26. Thus, whether Norm, who no longer had ownership or supervisory authority, told Estes he would be a temporary employee is not relevant to whether Estes was a temporary employee or not. Plaintiffs also seem to argue that something about alleging "full time" employee status shows pretext. This does not raise a genuine issue of material fact.

Plaintiff Albers did not receive health insurance benefits from Tri-State until he was promoted to be head painter because Tri-State did not consider him, as a helper, eligible for such benefits until that promotion to head painter. *See* Steve Mellegard Depo. at 37-39. Plaintiff Estes did not receive health insurance benefits during his employ at Tri-State because he was hired on a temporary, as-needed basis to the helper position from which Albers had just been promoted. Estes was supposed to be doing a summer, fill-in type job. *See* Murra Depo. at 16. Tri-State considered the position of helper to the head painter, which was held by Albers and then Estes, both of whom were preceded in such position by white persons, to be a temporary position (sometimes Steve and Stan referenced it as a part-time position), with the employee hired on an as-needed basis. *See* Stan Mellegard Depo. at 44-45. Tri-State did not offer benefits

such as health insurance to the person in such a temporary, as-needed position, whether the person was Native American, like Albers and Estes, white, or of another race. *Id*. The undisputed facts show that Tri State did not consider the helper position held by Estes to be eligible for health insurance, regardless of race. This fact is further proved by the fact that once Albers was promoted from this helper position to his position as head painter, he was given health insurance benefits. Plaintiffs present no genuine dispute of material fact to show that the availability of health insurance benefits, to Albers, but not to Estes, constituted discrimination on the basis of race or that Tri State offered such benefits to Albers, but not to Estes, as a pretext for race discrimination.

Finally, Plaintiffs do not respond to the argument that Steve and Stan are entitled to summary judgment, individually, with respect to Plaintiffs § 1981 claims. The Eighth Circuit has ruled that supervisors are not individually liable for alleged race discrimination by an employer. *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999); *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691 (8th Cir. 1997) (ruling bank president could not be held personally liable for sexually harassing bank teller); *Smith v. St. Bernard's Regional Med. Center*, 19 F.3d 1254 (8th Cir. 1994) (claims against individual defendants properly dismissed because liability for discrimination attached only to employer). In a different section of their brief, Plaintiffs merely assert that they pleaded that the corporate veil of Tri State should be pierced. Plaintiffs present, however, no evidence supporting the argument that Tri State's corporate veil should be pierced. Nor do they dispute the legal authority forbidding the imposition of individual liability

as against Steven and Stan. It is thus undisputed that Steve and Stan are entitled to summary judgment regarding Plaintiffs' individual claims against them.[1]

Accordingly, the Court should grant summary judgment to Tri State on Plaintiffs § 1981 claim.

### ERISA claims

Plaintiffs have apparently abandoned their claim that ERISA was violated by not personally delivering to Albers a copy of the retirement plan's summary plan description or annual statements because they make no further argument regarding that claim. Instead, they argue ERISA was violated because Albers did not receive health insurance until he became head painter and because Estes did not receive health insurance or participation in the employees' IRA plan. Again, Plaintiffs seem to stake their argument on their alleged "full time" employee status. This argument ignores the fact that ERISA does not allow for a cause of action on the basis of such claims. ERISA authorizes civil actions by plan participants, plan beneficiaries, plant fiduciaries, and employee benefit plans. *See* 29 U.S.C. §§ 1132(a)(1)-(4), 1132(d), and 1137(a); *see also Kiesz v. General Parts, Inc.*, 2007 WL 963489, *13 (D.S.D. March 28, 2007) (finding no ERISA preemption of claim by employee not eligible to participate in employer's plan because of part-time status). Plaintiffs' argument also ignores the undisputed fact that Tri State did not allow employees to participate in their health insurance or IRA plans until the employees were no longer considered temporary employees. *See* Stan Mellegard Depo. at 44-45; Murra

---

[1] Not only is there no individual liability regarding the § 1981 claims, Plaintiffs cannot hold Steven and Stan individually liable under the ERISA claims or the FLSA claims. *See Rockney v. Blohorn*, 877 F.2d 637, 641 (8th Cir. 1989); 29 U.S.C. § 216(b) (permitting FLSA action against employer, but not any other person).

8

Depo. at 16. "Full time" was not the distinction; temporary or permanent status was the deciding factor for entitlement to benefits. *Id*. Thus, when Albers was promoted from the temporary helper position to head painter, he became entitled to benefits, and because Estes was hired and remained in the temporary helper position, he was not entitled to benefits. These facts are undisputed, and Plaintiffs simply fail to state an ERISA claim. Plaintiffs' ERISA cause of action should be dismissed as a matter of law.

Plaintiffs fail to respond to the argument that Albers' bankruptcy bars his claims prior to discharge. *Harms v. Cigna Ins. Companies*, 421 F.Supp.2d 1225, 1228 (D.S.D. 2006). Under *Harms*, any claim by Albers against Tri-State, Stan or Steve that pre-dates May 22, 2005 is barred as judicially estopped due to Albers' failure to list such a claim as an asset in his bankruptcy schedules.

Accordingly, the Court should grant summary judgment to Defendants upon Plaintiffs' ERISA claims.

## **FLSA claims**

Plaintiffs' final substantive legal claim arises under FLSA, alleging they were wrongfully denied overtime pay. Plaintiffs first claim they are not exempt employees under FLSA because they assert Defendants' Answer constitutes a judicial admission, binding upon Defendants, that Plaintiffs were non-exempt. However, the very language quoted by Plaintiffs shows that Defendants merely identified certain of the tasks performed by Plaintiffs, as shown by Defendants' argument, Defendants did not intend their Answer to preclude them from asserting that the nature of the tasks performed by Plaintiffs could cause them to be, as were most of Defendants' employees, exempt employees for purposes of FLSA. To the extent Defendants'

Answer would be deemed an admission to preclude this argument, Defendants would respectfully request the Court's permission to amend their Answer to delete references which would constitute such an admission.

Plaintiffs then fail to respond to the legal argument of exemption raised by Defendants. Most employees of implement dealers, such as Tri-State, are exempt from the FLSA's overtime pay provisions. When a business, like Tri-State is primarily engaged in selling automobiles, trucks or farm implements to ultimate purchasers, many of its employees are exempt from overtime rights. *See* U.S.C. § 213(b)(10)(A). The FLSA does not define "mechanics" who are exempt, but the term has been interpreted to include all employees doing mechanical work, such as "get ready" mechanics, automobile, truck or farm implement mechanics, body or fender mechanics, used car reconditioning mechanics, and wrecker mechanics. *See Paneto v. Motor Car Concepts II, Inc.*, 2007 WL 328730 (M.D. Fla. Jan. 31, 2007); *Shultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61 (5th Cir. 1970).

Thus, an employee of a car dealer who was described as a "pre-delivery inspection technician" and who checked the cars' air conditioning, battery, steering, fluids, interior, gauges, locks, mirrors, windows and seats, drove the cars a few miles to ensure proper operation, installed accessories, attached license plates and stickers, and ensured proper door and hood adjustments was an exempt "mechanic." *See Viart v. Bull Motors, Inc.*, 149 F. Supp.2d 1346, 1347-48 (S.D. Fla. 2001). This employee did not perform repairs on the cars. *Id*. at 1348. *Viart* ruled the employee fell within the "get ready" mechanics considered exempt under the FLSA. *Id*. at 1349.

In this case, Plaintiffs were engaged in more mechanical work than mere unskilled laborers. They not only washed the farm equipment, they engaged in body work, as well as sanding, painting, or polishing. They were involved with such mechanical items as electrical work, tire work, slide wheels, machinery set-up. Thus, the Court should consider Plaintiffs to be exempt from the FLSA under the mechanic exemption provided to automobile, truck and farm implement dealers.

Plaintiffs also claim a fact question exists as to their alleged entitlement to liquidated damages under the FLSA. However, as Defendants have shown, Tri-State's bookkeeper contacted the South Dakota Department of Labor to determine whether Tri-State should be paying overtime wages. She was advised that Tri-State did not need to do so. Thus, Tri-State was acting in good faith, and with a reasonable ground to believe it was not violating the FLSA when it was following advice its bookkeeper received from the Department of Labor. Plaintiffs present no genuine issues of material fact in dispute in this matter, nor do they make any showing that Defendants were not acting in good faith and upon a reasonable basis. Accordingly, the Court should grant summary judgment to Defendants in this claim. *See* 4 Employment Coordinator § 41.272 (2008 Thomson West) (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 202 (7th Cir. 1986); *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (19th Cir. 1991); *Casserly v. State*, 844 P.2d 1275 (Colo. App. 1992)).

### Punitive Damages

Finally, the Court should grant summary judgment regarding Plaintiffs' claim for punitive damages. Plaintiffs admit that punitive damages are not available for their claims under ERISA and FLSA. They instead assert entitlement to punitive damages under their § 1981

11

claim. "Plaintiffs who seek punitive damages in employment discrimination cases face a formidable burden." *Lawrence v. CNF Transportation, Inc.,* 340 F.3d 486, 495 (8th Cir. 2003). Few discrimination cases contain the necessary malicious or reckless conduct by an employer for which an employee can attain punitive damages. *See Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1071 (8th Cir. 2005); *Rowe v. Hussmann Corp.,* 381 F.3d 775, 783 (8th Cir. 2004).

For Tri-State to be subject to punitive damages, there must be proof that Defendants acted with malice or reckless indifference to Plaintiffs' federally protected rights. *Kolstad v. American. Dental Ass'n,* 527 U.S. 526, 535 (1999). *See also Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1008 (8th Cir. 2000). In *Kolstad,* the Supreme Court held that an "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad,* 527 U.S. at 536. *See also Ferris v. First Nat'l of Nebraska,* 2006 WL 1720488 (D. Neb. 2006) (providing that although the employer's conduct does not have to amount to "egregious," the employee must make a showing that the employer acted intentionally with an understanding that it may be violating federal law).

As did Plaintiffs under their substantive § 1981 claim, they rely upon an argument that the race-based comments were "egregious," and therefore, the Court should consider nothing further in permitting a claim of punitive damages to go to the jury. This argument ignores entirely the legal prerequisites for proving hostile work environment, constructive discharge, and discrete acts of discrimination, as set forth above in this brief and in Defendants' initial brief in support of summary judgment.

Plaintiffs have neither alleged nor proven a hostile work environment, as the context of the remarks show Plaintiffs were also engaged in such comments about themselves and other

12

races, Plaintiffs did not complain about such comments and by their conduct even welcomed such comments, and Plaintiffs neither alleged nor testified that such comments interfered with their job performance.  Nor have Plaintiffs asserted a viable claim of constructive discharge, as they both testified they quit because Estes was not going to receive health insurance, not because race-based comments had been made and had risen to such a level of pervasiveness and severity that no reasonable person could continue to work without an affect upon his job performance.  Finally, Plaintiffs fail to make out a claim of a discrete act of race discrimination because Albers, a Native American, received health insurance upon his promotion to head painter, while Estes, a Native American hired for Albers' old helper position, did not receive health insurance during his employ in that temporary, as-needed position.  The distinction between the recipients of health insurance benefits at Tri State was not race, but position – head painter vs. temporary, as-needed helper.  In light of the facts of this case, Plaintiffs do not overcome their "formidable burden" to show entitlement to punitive damages, and the Court should grant summary judgment on this claim.

## Conclusion

In accordance with the foregoing legal authorities and argument, as well as the legal authorities and argument set forth in Defendants' initial brief, Defendants respectfully request that the Court grant summary judgment in their favor as to Plaintiffs' claims against them.

Dated at Sioux Falls, South Dakota, this 14th day of April, 2008.

>DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.
>
>/s/ Sandra Hoglund Hanson
>Electronically Filed
>Susan Brunick Simons
>Sandra Hoglund Hanson
>206 West 14th Street
>PO Box 1030
>Sioux Falls, SD 57101-1030
>Telephone: (605) 336-2880
>Facsimile: (605) 335-3639
>E-mail: shanson@dehs.com
>*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants, hereby certifies that a true and correct copy of the foregoing "Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment" was served by electronic service by the Court upon:

>Richard D. Casey
>Ryland Deinert
>Lynn, Jackson, Shultz & LeBrun, P.C.
>P.O. Box 2700
>Sioux Falls, SD 57101-2700
>  *Attorneys for Plaintiffs*

on this 14th day of April, 2008.

>/s/ Sandra Hoglund Hanson
>Electronically Filed